Joshua B. Swigart (SBN 225557)
Josh@SwigartLawGroup.com
Spencer L. Pfeiff (SBN 343305)
Spencer@ SwigartLawGroup.com
**SWIGART LAW GROUP, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 866-219-3343
F: 866-219-8344

Daniel G. Shay (SBN 250548)
DanielShay@TCPAFDCPA.com
**LAW OFFICE OF DANIEL G. SHAY**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 619-222-7429
F: 866-219-8344

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON RENDON, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CHERRY CREEK MORTGAGE, LLC, AND ADVANTAGE CREDIT, INC.,<br><br>Defendants. | Case No.: **'22CV1194 BEN MSB**<br><br>**CLASS ACTION**<br><br>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF:<br><br>FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681 ET SEQ.<br><br>CONSUMER CREDIT REPORTING AGENCIES ACT, CAL. CIV. CODE § 1785 ET SEQ.<br><br>JURY TRIAL DEMANDED |

1

Complaint

**INTRODUCTION**

1. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. As such, Congress enacted the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq, to insure fair and accurate reporting, promote efficiency in the banking system and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. The California legislature also determined that accurate credit reporting is vital and enacted the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.1 et seq.

3. Aaron Rednon ("Plaintiff"), individually and on behalf of all others similarly situated California residents ("Class Members"), brings this action to challenge the conduct of Cherry Creek Mortgage, LLC ("CCM") and Advantage Credit, Inc., ("ACI") collectively "Defendants" and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, related entities for the obtaining consumer reports without a permissible purpose in violation of 15 U.S.C. § 1681b(f) and Cal. Civ. Code § 1785.31(a)(3).

4. unlawful ordering of consumers' credit reports without consumers' consent in violation of the 15 U.S.C. § 1681 et seq.

5. Plaintiff makes these allegations based on personal knowledge and investigation conducted by Plaintiff's attorneys.

6. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

7. Any violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

8. Unless otherwise indicated, the use of a Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants named.

## JURISDICTION AND VENUE

9. Jurisdiction of this Court arises pursuant to general state jurisdiction.

10. The action arises out of Defendants violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, et seq, and the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.1 et seq.

11. Because Defendants are authorized to and regularly conduct business in the State of California, personal jurisdiction is established.

12. Venue is proper in San Diego County because Plaintiff resides in San Diego County and the events giving rise to Plaintiff's cause(s) of action against Defendants occurred within San Diego County.

## PARTIES & DEFINITIONS

13. Plaintiff is a natural person who resides in San Diego County and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c) and Cal. Civ. Code § 1785.3 (b).

14. CCM is a finance company that conducts business in San Diego County. CCM is a furnisher of information under 12 CFR § 1022.41(c) because it regularly, and in the ordinary course of business, furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in consumer reports. CCM also furnishes information to consumer reporting agencies about consumer transactions or experiences with consumers like Plaintiff and is bound by U.S.C.

Complaint

1681s-2. CCM is a "person" as defined by 15 U.S.C. § 1681a(b) and Cal. Civ. Code § 1785.3(j).

15. ACI is a corporation that conducts business in San Diego County. ACI is a furnisher of information under 12 CFR § 1022.41(c) because it regularly, and in the ordinary course of business, furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in consumer reports. ACI also furnishes information to consumer reporting agencies about consumer transactions or experiences with consumers like Plaintiff and is bound by U.S.C. 1681s-2. ACI is a "person" as defined by 15 U.S.C. § 1681a(b) and Cal. Civ. Code § 1785.3(j).

16. The causes of action herein pertain to Plaintiff's "consumer report" under 15 U.S. Code § 1681a(d) and Plaintiff's "consumer credit report" under Cal. Civ. Code § 1785.3(c), in that inaccurate representations of Plaintiff's credit worthiness, credit standing and credit capacity were made via written, oral, or other communication of information by a consumer credit reporting agency, which is used or is expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

## FACTUAL ALLEGATIONS

17. Around July 6, 2022, Plaintiff received notice from Credit Karma that Defendants conducted a credit inquiry on Plaintiff's credit file.

18. However, Plaintiff did not apply for any credit with CCM or ACI and did not authorize CCM or ACI to obtain Plaintiff's consumer credit reports for any reason.

19. Around the same time, Plaintiff called ACI and CCM to dispute any authority Defendants may have had to access Plaintiff's credit reports. Specifically, Plaintiff informed ACI and CCM that Plaintiff did not apply for any loan or credit

4
Complaint

product with either Defendant and did not authorize ACI or CCM to conduct a hard inquiry regarding Plaintiff's credit files.

20. During the call, CCM informed Plaintiff that a "technical issue involving a text message CCM sent to Plaintiff, in which Plaintiff replied "STOP," triggered a response in CCM's system that resulted in CCM conducting a credit inquiry on Plaintiff's credit file in error."

21. To this date, Plaintiff has not located the alleged text message described by CCM. Plaintiff never received such referenced text message and did not reply "STOP" in response, as alleged by Defendant CCM. Plaintiff never authorized either Defendant to access his credit reports for any reason.

22. Around July 25, 2022, CCM sent a letter to ACI and Plaintiff. The CCM letter explained that CCM "[D]iscovered we had a technical issue within our system which resulted in Cherry Creek Mortgage (CCM) ordering the consumer's credit report in error."

23. CCM's July 25, 2022, letter advised Plaintiff to contact each credit reporting agency to request removal of the Defendants' inquiry and informed Plaintiff that he would receive a $350.00 check to "offset the inconvenience of him having to take additional steps to remove this inquiry." This letter and statements by CCM further support Plaintiff's allegations that neither CCM or ACI ever had authorization or a permissible purpose to access any of Plaintiff's credit reports.

24. On July 26, 2022, ACI wrote to Equifax, Experian, and Trans Union that ACI and CCM received an "inquiry dispute" from Plaintiff regarding an unauthorized credit pull and that CCM confirmed that the "inquiry was made without proper authorization / in error."

25. However, Plaintiff did not dispute the CCM/ACI hard inquiry with the credit reporting agencies.

26. Therefore, Plaintiff believes the "inquiry dispute" described in the ACI letter to Equifax, Experian, and Trans Union was in reference to the Plaintiffs prior call

to ACI and CCM in which Plaintiff disputed any authority Defendants may have had to access Plaintiff's credit reports.

27. ACI's July 26, 2022, letter requested that Equifax, Experian and Trans Union remove the unauthorized inquiry from Plaintiff's credit file, further supporting the allegations by Plaintiff that he never authorized either Defendant to access his credit reports and such access was not for a permissible purpose.

28. The FCRA mandates that consumer reports be used or obtained only for permissible purposes enumerated in the statute. 15 U.S.C. § 1681b(f).

29. Under the FCRA, a "person shall not use or obtain a consumer report for any purpose unless – (1) the consumer report is obtained for a purpose the consumer report is authorized to be furnished" and one other condition is met.

30. Defendants did not obtain Plaintiff's consumer report for any purpose that Plaintiff authorized. Through this conduct, Defendants violated 15 U.S.C. § 1681b(f)(1).

31. The authorized purposes specified in the FCRA include consumer reports furnished "in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A).

32. Plaintiff did not seek an extension of credit from CCM or ACI, and Plaintiff's consumer report was not furnished in connection with a credit transaction involving Plaintiff. Yet, Defendants obtained Plaintiff's consumer credit report anyway. Through this conduct Defendants violated 15 U.S.C. § 1681b(a)(3)(A).

33. Through this conduct, Defendants violated Cal. Civ. Code § 1785.31(a)(3).

34. Plaintiff did not authorize Plaintiff's credit file to be furnished to Defendants, and Defendants did not obtain Plaintiff's credit file in connection with any credit transaction involving the extension of credit to Plaintiff. As such, Defendants used and obtained Plaintiff's consumer reports without a permissible purpose.

Complaint

35. As a result, Defendants' conduct caused Plaintiff's credit score to decrease and reported materially misleading and incorrect information on Plaintiff's consumer credit reports. Specifically, that Plaintiff applied for a loan, which was untrue.

36. Plaintiff seeks statutory damages, actual damages, and injunctive relief under 15 U.S.C. § 1681n(a); 15 U.S.C. § 1681o(a); Cal. Civ. Code § 1785.31(a); and Cal. Civ. Code § 1785.31(b).

## CLASS ACTION ALLEGATIONS

37. Plaintiff brings this lawsuit as a class action on behalf of himself and Class Members of the proposed Classes. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

38. Plaintiff proposes the following two Classes consisting of and defined as follows:
    a. The Impermissible Purpose Class for Violations of the Fair Credit Reporting Act ("FCRA"), consisting of:
       All persons whose credit reports were furnished to Defendants without authorization and unrelated to any transaction involving the extension of credit to that person, within the two years prior to the filing of the Complaint.

    b. The California Impermissible Purpose Class for Violations of the California Consumer Credit Reporting Agencies Act ("CCRAA"), consisting of;
       All persons in California whose credit reports were knowingly obtained by Defendants without authorization and unrelated to any transaction involving the extension of credit to that person, within the two years prior to the filing of the Complaint.

39. Excluded from the Class are: (1) Defendants, any entity or division in which Defendants has controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned

and the Judge's staff; and (3) those persons who have suffered personal injury as a result of the facts alleged herein.

40. Plaintiff reserves the right to redefine the Class and to add subclasses as appropriate based on discovery and specific theories of liability.

41. <u>Numerosity</u>: The Class Members are so numerous that joinder of all members would be unfeasible and impractical. The membership of the entire Class is currently unknown to Plaintiff at this time; however, given that, on information and belief, Defendants technical glitch resulted in thousands of impermissible credit inquires within California and across the Country during the class period, it is reasonable to presume that the members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

42. <u>Commonality</u>: There are common questions of law and fact as to Class Members that predominate over questions affecting only individual members, including, but not limited to:

- Whether Defendants obtained Class Members authorization to use or obtain Class Members' credit reports;
- Whether Defendants obtained Class Members credit files in connection with any transaction involving the extension of credit to Class Members;
- Whether, within the statutory period Defendants obtained or used Class Members credit reports for a purpose not enumerated by the FCRA 15 U.S.C. § 1681f(b) or Cal. Civ. Code § 1785.31(a)(3);
- Whether Plaintiff and Class members were damaged thereby, and the extent of damages for such violation; and
- Whether Defendants should be enjoined from engaging in such conduct in the future.

43. <u>Typicality</u>: Plaintiff did not authorize Plaintiff's credit file to be furnished to Defendants, and Defendants did not obtain Plaintiff's credit file in connection with any credit transaction involving the extension of credit to Plaintiff and thus, his injuries are also typical to Class Members.

44. Plaintiff and Class Members were harmed by the acts of Defendants in at least the following ways: Defendants obtained and used Plaintiff's and Class Members' credit file by way of a hard inquiry which negatively affected Plaintiff's and Class Members' credit scores and credit worthiness. Plaintiff and Class Members were damaged thereby.

45. <u>Adequacy</u>: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member with whom he is similarly situated, as demonstrated herein. Plaintiff acknowledges that he has an obligation to make known to the Court any relationships, conflicts, or differences with any Class Member. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling claims involving consumer actions and violations of the FCRA and CCRAA. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

46. <u>Predominance</u>: Questions of law or fact common to the Class Members predominate over any questions affecting only individual members of the Class. The elements of the legal claims brought by Plaintiff and Class Members are capable of proof at trial through evidence that is common to the Class rather than individual to its members.

47. <u>Superiority</u>: A class action is a superior method for the fair and efficient adjudication of this controversy because:

   a. Class-wide damages are essential to induce Defendants to comply with

Federal and California law.

b.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct.

c.  Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

d.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.

e.  Class action treatment is manageable because it will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would endanger.

f.  Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy.

48. Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is also superior to other available methods because as individual Class Members have no way of discovering that Defendants' conducted inquiries into their credit reports without a authorization or a permissible purpose.

49. The Class may also be certified because:

- the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants;
- the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them that would, as a

     practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

- Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

50. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of Class Members and it expressly is not intended to request any 4-recovery for personal injury and claims related thereto.

51. The joinder of Class Members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court. The Class Members can be identified through Defendants' records.

## CAUSES OF ACTION

## COUNT I

## THE FAIR CREDIT REPORTING ACT

## 15 U.S.C. § 1681 ET SEQ.

52. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

53. It is Defendants' practice to obtain consumer reports in the course of considering consumers for new credit products.

54. Defendants used or obtained consumer reports to consider consumers for new credit products even when the consumers had not applied for the products and wherein Defendants had no permissible purpose for the consumer reports.

55. Defendants used or obtained consumer reports without a permissible purpose in connection with unauthorized applications for credit products.

56. The FCRA mandates that consumer reports be used or obtained only for permissible purposes enumerated in the statute. 15 U.S.C. § 1681b(f).

57. Under the FCRA, a "person shall not use or obtain a consumer report for any purpose unless – (1) the consumer report is obtained for a purpose fo which the consumer report is authorized to be furnished" and one other condition is met. 15 U.S.C. § 1681b(f).

58. The authorized purposes specified in the FCRA include consumer reports furnished "in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A).

59. Since, Defendants did not obtain consumer reports with the consumers' authorization nor in connection with a credit transaction involving the consumers, Defendants obtained consumer reports without a permissible purpose in violation of 15 U.S.C. § 1681b(f).

60. As a result of each and every negligent violation of the FCRA, Plaintiff and Class Members are entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1) and reasonable attorney fees and costs pursuant to 15 U.S.C. § 1681o(a)(2).

61. As a result of each and every willful violation of the FCRA, Plaintiff and Class Members are entitled to actual damages and statutory damages of not less than $100 and not more than $1,000 and such amount as the court may allow pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney fees and costs pursuant to 15 U.S.C. § 1681n(a)(3).

## COUNT II
## THE CONSUMER CREDIT REPORTING AGENCIES ACT
## CAL. CIV. CODE § 1785.1, ET SEQ.

62. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

Complaint

63. The foregoing acts and omissions constitute numerous and multiple violations of the California Consumer Credit Reporting Agencies Act.
64. It was Defendants' practice to obtain consumer reports in the course of considering consumers for new credit products.
65. Defendants used or obtained consumer reports to consider consumers for new credit products even when the consumers had not applied for the products and wherein Defendants had no permissible purpose for the consumer reports in violation of Cal. Civ. Code § 1785.31(a)(3).
66. As a result of such unlawful conduct, Plaintiff and the Class Members were damaged, in an amount according to proof but in an amount of not less than $2,500, pursuant to Cal. Civ. Code § 1785.31(a)(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Class Members pray that judgment be entered against Defendants, and Plaintiff and the Class Members be awarded damages from Defendants, as follows:

- Certify the Class as requested herein;
- Appoint Plaintiff to serve as the Class Representative for the Class; and
- Appoint Plaintiff's Counsel as Class Counsel in this matter for the Class.

In addition, Plaintiff and the Class Members pray for further judgement as follows against Defendant:

### IMPERMISSIBLE CREDIT REPORT INQUIRES UNDER 15 U.S.C. § 1681B(F)

- $1,000 to each Class Member pursuant to 15 U.S.C. § 1681n(a)(1)(A);
- Reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(2);
- Any other relief the Court may deem just and proper including interest.

Complaint

**IMPERMISSIBLE CREDIT REPORT INQUIRES
UNDER CAL. CIV. CODE § 1785.31**

- $5,000 to each Class Member pursuant to Cal. Civ. Code § 1785.31(a)(2)(B);
- $2,500 to each Class Member pursuant to Cal 1785.31(a)(3);
- Reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1785.31(a)(1) and Cal. Civ. Code § 1785.31(d);
- Injunctive relief to prevent the further occurrence of such illegal acts pursuant to Cal. Civ. Code § 1785.31(b);
- Any other relief the Court may deem just and proper including interest.

**TRIAL BY JURY**

67. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff and Class Members are entitled to, and demand, a trial by jury.

Date: August 15, 2022

SWIGART LAW GROUP, APC

By: *s/ Joshua B. Swigart*
Joshua B. Swigart, Esq.
Josh@SwigartLawGroup.com

Attorneys for Plaintiffs and the putative class

Complaint