UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON RENDON, individually and on behalf of others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>CHERRY CREEK MORTGAGE, LLC,<br><br>        Defendant. | Case No. 22-cv-01194-DMS-MSB<br><br>**ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

Pending before the Court is Defendant's motion to dismiss Plaintiff's First Amended Complaint based on lack of subject matter jurisdiction (ECF No. 17). Plaintiff filed an opposition (ECF No. 18), and Defendant filed a reply (ECF No. 20). For the following reasons, Defendant's motion to dismiss is denied.

**I.**

**BACKGROUND**

On or around July 6, 2022, Plaintiff received notice from Credit Karma that Cherry Creek Mortgage ("CCM") conducted a credit inquiry on Plaintiff's credit file, and his credit score decreased. (First Amended Complaint (FAC) at ¶ 15.) Plaintiff did not apply for any credit with Defendant, and did not authorize

Defendant to obtain his credit report. (*Id.* at ¶ 16.) Thereafter, Plaintiff spoke with Defendant on the phone and learned Defendant had a "technical issue" which resulted in Defendant conducting a credit inquiry. (*Id.* at ¶ 19.) On or around July 25, 2022, Defendant sent Plaintiff a letter advising Plaintiff there was a "technical issue" within CCM's system which resulted in CCM ordering Plaintiff's credit report. (*Id.* at ¶ 21.) In a letter dated July 26, 2022, Defendant stated the credit "inquiry was made without proper authorization" and Defendant advised Plaintiff it contacted Equifax, Experian and TransUnion to remove the inquiry from Plaintiff's file. (*Id.* at ¶¶ 23-24.) Defendant advised Plaintiff it would send Plaintiff a check for $350 to "offset the inconvenience." (*Id.* at ¶ 22.) On August 15, 2022, Plaintiff filed this action. (ECF No. 1.)

Plaintiff brings putative class claims arising from the above conduct. Plaintiff alleges Defendant violated the California Consumer Credit Reporting Agencies Act ("CCRAA"), specifically Cal. Civ. Code § 1785.31(a)(3), and the Fair Credit Reporting Act ("FCRA"), specifically 15 U.S.C. § 1681b(f) (referred to herein as "§ 1681b(f)"). The parties jointly sought leave to amend the complaint (ECF No. 9), and the Court granted leave (ECF No. 10). Plaintiff filed a FAC. (ECF No. 13.) Defendant now moves to dismiss the FAC based on lack of subject matter jurisdiction. (ECF No. 17.)

## II.

## LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A jurisdictional attack under Rule 12(b)(1) can be either "facial" or "factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted). "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117,

1121 (9th Cir. 2014) (citation omitted). "A 'factual' attack, by contrast, contests the truth of the plaintiff's factual allegations." *Id*. In a facial attack, as is here, the Court may look beyond the complaint and consider other evidence. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

A Plaintiff need only satisfy the good-faith pleading requirements set forth in Rule 11 of the Federal Rules of Civil Procedure. *Sierra Club v. Union Oil Co. of California*, 853 F.2d 667, 669 (9th Cir. 1988). The plaintiff's allegations must be based on good-faith beliefs, "formed after reasonable inquiry," that are "well grounded in fact." *Id.* (citing Fed. R. Civ. P. 11). Plaintiff, as the party asserting subject matter jurisdiction, "bears the burden of proving its existence." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). At this stage, the Court accepts as true all factual allegations in the complaint and construes them in the light most favorable to the Plaintiff. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 981 (9th Cir. 2017).

**B. Standing**

Standing consists of three elements. The plaintiff must show "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). When a case is at the pleading stage, "the plaintiff must 'clearly . . . alleged facts demonstrating each element." *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 298 (1975)). This case concerns the first element. Specifically, whether the injury in fact is concrete.

///

## III.

## DISCUSSION

In the Ninth Circuit, there is a "two-step framework to determine whether alleged violations of FCRA provisions are sufficiently concrete to confer standing: '(1) whether the statutory provisions at issue were established to protect [a plaintiff's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests.'" *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022) (alteration in original) (quoting *Robins v. Spokeo, Inc.* (*Spokeo III*), 867 F.3d 1108, 1113 (9th Cir. 2017)). This is known as the *Spokeo III* framework. Defendant insists this framework no longer controls in light of the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). (*See generally* ECF No. 17.) The Court is unpersuaded.

Defendant asserts the *Spokeo III* framework is no longer tenable because it is based on the Second Circuit's framework set forth in *Strubel v. Comenity Bank*, 842 F.3d 181 (2d Cir. 2016). Earlier this year, the Second Circuit denounced the *Strubel* framework in light of *TransUnion*. *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 443 (2d Cir. 2022) (explaining the "material risk" standard is no longer viable because "in a suit for damages mere risk of future harm, standing alone, cannot qualify as a concrete harm"). There are two issues with this assertion. First, the framework in *Spokeo III* is slightly different from the one in *Strubel*. *Spokeo III* states courts must consider whether the alleged violations "*actually harm*, or present a material risk of harm to" a plaintiff's concrete interests. 867 F.3d at 1113 (emphasis added). Since the *Spokeo III* framework includes the language "actual harm," rather than only "material risk" it survives *TransUnion*. Second, the Ninth Circuit has not denounced the *Spokeo III* framework. This is clear based on recent Ninth Circuit precedent. *See, e.g.*, *Tailford*, 26 F.4th at 1099-1101 (utilizing the *Spokeo III* framework to determine Plaintiff's allegations of substantive FCRA

violations constitute a concrete injury in fact).

Plaintiff implicitly relies on the *Spokeo III* standing framework given his reliance on *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480 (9th Cir. 2019) and *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109 (9th Cir. 2022). In *Nayab*, the plaintiff alleged the defendant, a bank, accessed her credit report without authorization in violation of 15 U.S.C. § 1681b(f)(1). *Nayab v. Capital One Bank N.A.*, 16-cv-3111, 2017 WL 2721982, at *2-3. (S.D. Cal. June 23, 2017). Plaintiff alleged this credit check resulted in a decrease in credit score, which directly impacted her credit availability. *Id.* at *2. Using the *Spokeo III* framework, the Ninth Circuit determined the plaintiff had standing based on an alleged § 1681b(f) violation. *Nayab*, 942 F.3d at 493. Expounding on *Spokeo III*, it held that in order to survive a motion to dismiss, a consumer need only allege facts giving rise to a reasonable inference that defendant obtained his or her credit report for a purpose not authorized by the FCRA. *Id.* at 490.

Defendant argues *Nayab* is irreconcilable with *TransUnion* because the Ninth Circuit held "Nayab has standing to vindicate her right to privacy under the FCRA when a third-party obtains her credit report without a purpose authorized by statute, regardless whether the credit report is published or otherwise by that third-party." *Id.* at 493. *Nayab* concerned § 1681b(f) and compared the injury alleged by the plaintiff to the injury from the tort of intrusion upon seclusion, where publication to a third-party is irrelevant. *Id.* at 490. *TransUnion* concerned 15 U.S.C. § 1681e(b) and compared the injury alleged by Plaintiffs to the injury from the tort of defamation, where publication to a third-party is relevant. 141 S. Ct. at 2208. Given that publication to a third-party is irrelevant to § 1681b(f) and intrusion upon seclusion, *Nayab* remains precedential. Based on the similar allegations in this case, *Nayab* is instructive.

Plaintiff's allegations here meet both prongs of *Spokeo III*. Congress' declared purpose of the FCRA is to ensure that "consumer reporting agencies

exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." *Nayab*, 942 F.3d at 492. Thus, Congress passed the FCRA with the intention of protecting consumers' information. Plaintiff here alleges violations of § 1681b(f). (FAC at ¶¶ 3, 23-27, 56-63.) The privacy interest protected by § 1681b(f) is the "right to keep private the sensitive information about his or her person." *Nayab*, 942 F.3d at 492. Section 1681b(f)(1) does not merely describe a procedure to follow, rather, it protects the consumers substantive privacy interest. *Id.* at 490. Thus, "obtaining a credit report for a purpose not authorized under the FCRA violates a *substantive* provision of the FCRA." *Id.* (emphasis in original). As such, privacy interests protected by § 1681b(f)(1) are harmed when a credit report is obtained for a purpose not authorized under the FCRA. Both prongs of *Spokeo III* are therefore satisfied.

*Nayab* also makes clear that in assessing whether an intangible harm constitutes an injury in fact, courts must consider the history and judgment of Congress. 942 F.3d at 487. This was further reinforced by *TransUnion*. 141 S. Ct. at 2205 (reiterating a statutory violation on its own is not sufficient to confer standing). Plaintiff alleges an intangible injury here—a violation of his privacy interests. *TransUnion* "strengthens the principle that an intangible injury is sufficiently 'concrete' when (1) Congress created a statutory cause of action for the injury, and (2) the injury has a close historical or common law analog." *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1118 (9th Cir. 2022) (quoting *TransUnion*, 141 S. Ct. at 2204-07).

Here, Congress created a statutory cause of action for consumers when consumers' credit reports are accessed without a permissible purpose. *See* 15 U.S.C. § 1681b(f). In assessing whether Plaintiff's alleged injury has a close historical or common-law analog, it is undisputed that an "exact duplicate" is not required. *TransUnion*, 141 S. Ct. at 2204. The close common-law tort here is intrusion upon seclusion. *See Nayab*, 942 F.2d at 491 (explaining a violation of § 1681b(f) is akin

to intrusion upon seclusion). The parties diverge on whether Plaintiff's allegations are sufficiently close to the tort of intrusion upon seclusion. Defendant contends because Plaintiff does not, and cannot, allege intent, this comparator tort is unavailable to Plaintiff. (*See* ECF No. 17 at 6-11.) The Court disagrees for two reasons.

First, Plaintiff does indeed allege Defendant's conduct was intentional. In the FAC, Plaintiff alleges that "[a]ny violations by Defendant were knowing, willful, and intentional." (ECF No. 13 at 3.) Throughout the FAC, Plaintiff details conversations with Defendant in the complaint and quotes the language used by Defendant. For example, "Plaintiff learned that a 'technical issue' occurred which resulted in Defendant 'conducting a credit inquiry on Plaintiff's credit file.'" (*Id.*) Additionally, "[t]he letter explained that Defendant 'discovered we had a technical issue within our system which resulted in Cherry Creek Mortgage (CCM) ordering the consumer's credit report.'" (*Id.* at 4-5.) Defendant argues Plaintiff's use of Defendant's own words shows Plaintiff concedes Defendant's conduct was not intentional. However, nowhere in the complaint does Plaintiff allege Defendant's conduct was not intentional. Thus, whether Defendant intended to conduct the credit inquiry is a factual dispute not appropriate for a motion to dismiss.

Second, the focus of this inquiry is on the type of harm, not intent. *TransUnion*, 141 S. Ct. at 2204. Defendant relies heavily on *Hunstein v. Preferred Collection and Management Services, Inc.*, 48 F.4th 1236 (11th Cir. 2022), to support its argument that, without intent, Plaintiff's harm is not similar to intrusion upon seclusion. (ECF No. 17 at 12-14; ECF No. 20 at 5-6.) Its reliance on *Hunstein* is misplaced. In *Hunstein*, the plaintiff alleged a debt collector sent information about his debt to a commercial mail vendor. 48 F.4th at 1240. The plaintiff alleged this violated a provision of the Fair Debt Collection Practices Act (FDCPA), thereby harming him. *Id.* The plaintiff compared his alleged harm to that of a victim of the tort of public disclosure of private facts. *Id.* However, the Eleventh Circuit

explained private disclosure and public disclosure are qualitatively different, (*id.* at 1248-49), and the harm alleged by the *Hunstein* plaintiff was private. *Id.* at 1242. The harm alleged in *Hunstein* was private because the plaintiff's personal information was allegedly disclosed in the course of business, and not widely publicized to the public at large, as is required for there to be harm in the tort of public disclosure of private facts. *Id.* at 1246. Because the plaintiff failed to allege wide publication of private information, the Eleventh Circuit determined the harm alleged by the plaintiff versus the harm from public disclosure of private facts were distinct. *Id.* at 1245-47. Thus, the *Hunstein* plaintiff lacked standing. *Id.* at 1250. The distinction between public and private disclosure discussed in *Hunstein* relates to the kind of harm alleged. Thus, *Hunstein* reinforces that the focus of this inquiry is on the type of harm.

Defendant next argues Plaintiff suffered a "qualitatively different harm" from the harm suffered by intrusion upon seclusion. (ECF No. 17 at 15.) It relies on *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816 (5th Cir. 2022), to support this contention. *Perez* dealt with a plaintiff who received a letter which allegedly caused her to be misled and confused. *Id.* at 824. The Fifth Circuit explained for the tort of fraudulent misrepresentation, the traditional harm is "pecuniary loss," and confusion is not a similar harm "in kind." *Id.* at 824-25. *Perez* reiterates that the focus on the type of harm alleged must be "similar in kind to a type of harm that the common law has recognized as actionable." *Id.* at 822.

Contrary to Defendant's assertions otherwise, *Perez* and *Hunstein* support Plaintiff's position. Plaintiff's private information—i.e., his credit report—was allegedly accessed without a permissible purpose. A party complaining of intrusion upon seclusion is likewise harmed when their private information is accessed. The harm here is the same. Whether or not the intrusion was intentional does not impact the severity of harm. Accordingly, the alleged harm suffered by Plaintiff is sufficient "in kind" to the harm suffered by intrusion upon seclusion.

Applying the frameworks set forth in *Nayab* and *TransUnion* to the facts of this case, Plaintiff has alleged a concrete injury in fact. Under *Nayab*, there are two steps. First, § 1681b(f)(1), was established to protect Plaintiff's concrete privacy interest. Second, as alleged, once Defendant ran Plaintiff's credit report without a permissible purpose, Plaintiff's privacy interest was harmed. Under *TransUnion*, there are also two steps. First, Congress created a statutory action permitting Plaintiff to sue. *See* § 1681b(f). Second, Plaintiff asserted an injury with a close historical and common-law analog, intrusion upon seclusion. As such, Plaintiff has Article III standing.

## IV.

## CONCLUSION AND ORDER

For the reasons set out above, Defendant's motion to dismiss is DENIED.

**IT IS SO ORDERED.**

Dated:  December 20, 2022

Hon. Dana M. Sabraw, Chief Judge
United States District Court